UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David B. Triemert,                                  Court File No. 13-cv-3094 (MJD/LIB)
*individually and on behalf of all others*
*similarly situated*,

      Plaintiff,

v.                                                  **REPORT AND RECOMMENDATION**

Washington County, et al.,

      Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Defendant Washington County's Motion for Judgment on the Pleadings, [Docket No. 57]; Defendant Keefe Commissary Network, LLC's Motion for Judgment on the Pleadings, [Docket No. 65]; and Defendants First California Bank and Outpay Systems, LLC's Joint Motion for Judgment on the Pleadings, [Docket No. 70]. The Honorable Michael J. Davis, Chief United States District Judge for the District of Minnesota, referred the present motions to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, on August 19, 2014, and September 2, 2014. (Orders of Referral [Docket Nos. 63, 75]). A hearing on the motions was held on December 16, 2014.

For reasons articulated herein, the Court recommends **GRANTING** Defendant Washington County's Motion for Judgment on the Pleadings, [Docket No. 57]; **GRANTING** Defendant Keefe Commissary Network, LLC's Motion for Judgment on the Pleadings, [Docket No. 65]; and **GRANTING** Defendants First California Bank and Outpay Systems, LLC's Joint Motion for Judgment on the Pleadings, [Docket No. 70].

## I.     STATEMENT OF ALLEGED FACTS

Plaintiff David B. Triemert ("Plaintiff") brings the present action against Defendants Washington County, Keefe Commissary Network, LLC d/b/a Access Corrections ("KCN"), First California Bank ("FCB"), and Outpay Systems, LLC ("Outpay") (collectively, "Defendants"). Plaintiff challenges Washington County's policies of (1) assessing a $25 booking fee from detainees immediately upon arrival at Washington County detention facilities, and (2) upon release from Washington County detention facilities, issuing prepaid debit cards to detainees – as opposed to returning the actual *cash* they possessed upon booking or maintained on account during detention. Plaintiff alleges, on behalf of himself and all individuals similarly situated,[1] one count of deprivation of civil rights in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments – unlawful seizure, denial of property interest, and denial of due process; one count of conspiracy to violate civil rights in violation of 42 U.S.C. § 1985(3); one count of common law conversion; one count of civil theft in violation of Minn. Stat. § 604.14; and one count of common law unjust enrichment. (Third Amended Class Action Compl. [Docket No. 43], ¶¶ 1, 88, 100-119).

On or about May 29, 2013, Plaintiff was arrested "on, *inter alia*, suspicion of DUI" and booked into the Washington County Jail. (Id. ¶¶ 10, 11). Plaintiff alleges that upon booking, Washington County personnel confiscated $25.59 in cash and coin from Plaintiff. (Id. ¶ 13). Plaintiff alleges that on May 30, 2013, a friend deposited $40 in Plaintiff's jail account. (Id. ¶ 15). During his time in the Washington County Jail, Plaintiff allegedly placed an order for various personal care products and a phone card, and Washington County personnel deducted the

---

[1] Plaintiff defines "all individuals similarly situated" as "all individuals, from November 12, 2007 to present, who were deprived of their property pursuant to Washington County's booking fee or debit card policy without being provided the constitutionally guaranteed due process of law." (Third Amended Class Action Compl. [Docket No. 43], ¶ 88). Plaintiff has not, however, sought certification by the Court for this case to proceed as a class action as required by Fed. R. Civ. P. 23.

cost of the order from Plaintiff's account. (Id. ¶¶ 16-17). On May 31, 2013, Washington County released Plaintiff; Washington County did not return the $25.29 in cash and coin confiscated from Plaintiff upon booking or any cash for the balance of the other money deposited into his jail account. (Id. ¶¶ 20-21). Rather, Washington County charged Plaintiff a $25 booking fee – allegedly collected to offset costs associated with the county's booking procedures – and issued Plaintiff a prepaid debit card valued at $19.59 containing the balance of his jail account. (Id. ¶¶ 24, 26, 60). Plaintiff alleges that in lieu of returning cash and coin seized from individuals upon detention, Washington County returns "confiscated" money via prepaid debit cards or checks issued upon release. (Id. ¶ 23).

Plaintiff alleges that on or about January 13, 2012, Defendant Washington County entered into a contract[2] with Defendant KCN to provide prepaid debit cards to individuals released from Washington County detention facilities. (Id. ¶¶ 4, 8). Plaintiff alleges that Defendant FCB issues the debit cards and, as a result, acts under the color of law and is "a direct beneficiary" of the KCN/Washington County contract. (Id. ¶¶ 5, 28). Plaintiff alleges that Defendant Outpay processes the debit card transactions and also, as a result, acts under the color of law and is "a direct beneficiary" of the KCN/Washington County contract. (Id. ¶¶ 6, 29). Plaintiff asserts that "Washington County's policy is to confiscate cash and coin from all persons booked at its detention facilities and return that money in a form other than cash." (Id. ¶ 30).

Plaintiff alleges the debit cards begin to incur a weekly maintenance fee of $1.50 thirty-six (36) hours after issuance, a $2.75 ATM fee, and a $3.00 "card to bank funds transfer" fee, rendering it "impossible" for Plaintiff (and others similarly situated) to recover or otherwise access the amounts of cash seized at booking without incurring a fee. (Id. ¶¶ 32-35). Plaintiff

---

[2] Attached to Plaintiff's Third Amended Class Action Complaint as Exhibit 1. (Agreement for Prepaid Debit Card Release [Docket No. 43-1]).

alleges that Washington County's debit card policy violates the rights of pretrial detainees held at Washington County detention facilities. (Id. ¶ 40).

Plaintiff recognizes that Washington County assesses the $25 booking fee pursuant to Minn. Stat. § 641.12. (Id. ¶¶ 61-65).

## II.   DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS, [DOCKET NOS. 57, 65, 70]

Defendants move for judgment on the pleadings and an order dismissing Plaintiff's Third Amended Complaint with prejudice, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (See [Docket Nos. 57, 65, 70]).

### A.   Standard of Review

When reviewing Fed. R. Civ. P. 12(c) motions for judgment on the pleadings, courts "accept as true all facts [pled] by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Faibisch v. Univ. of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)); see also Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir. 1993); Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Judgment on the pleadings is appropriate when no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. Faibisch, 304 F.3d at 803 (citing Any & All Radio, 207 F.3d at 462). "A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint." Kampschroer v. Anoka Cnty., No. 13-cv-2512 (SRN/TNL), 2014 WL 3013101, at *5 (D. Minn. July 3, 2014) (citing Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint articulate "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. When reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). Courts draw all reasonable inferences in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

Courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible." See id. at 679-81. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

**B.     Analysis**

**1.     Count I: Deprivation of Civil Rights in Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments – Unlawful Seizure, Denial of Property Interest, and Denial of Due Process**

Plaintiff alleges Count I: Deprivation of Civil Rights in Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments – Unlawful Seizure, Denial of Property Interest, and Denial of Due Process against all Defendants generally. (Third Amended Class Action Compl. [Docket No. 43], ¶¶ 100-102). Section 1983 provides a private cause of action against those who, acting under color of law, deprive a United States citizen of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). Accordingly, as a threshold matter, to state a claim for relief pursuant to Section 1983, a plaintiff must plead an underlying constitutional violation. See, e.g., Askew v. Millerd, 191 F.3d 953, 958 (8th Cir. 1999); Farkarlun v. Hanning, 855 F. Supp. 2d 906, 932 (D. Minn. 2012) ("Section 1983 allows recovery for constitutional violations."); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (identifying a violation of a constitutional right as an "essential element" of Section 1983 liability: "[i]n order to incur § 1983 liability, there must first be a violation of the plaintiff's constitutional rights").[3] Because

---

[3] Regardless of whether Plaintiff attempts to plead a Monell claim or any individual capacity claims, or both, Plaintiff must plead facts sufficient to establish an underlying constitutional violation to survive the present Rule 12(c) motions. In Monell v. Dep't of Soc. Servs. of City of New York, the United States Supreme Court held that a municipal entity incurs liability for constitutional violations under Section 1983 when the alleged violation of a plaintiff's federally protected rights may be attributed to enforcement of a municipal custom or policy. 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity

imposition of Section 1983 liability requires an underlying constitutional violation, the Court

commences its analysis here.

First and foremost, on the record at the December 16, 2014 motions hearing, Plaintiff's

counsel affirmatively represented that Count I focuses on and exclusively alleges a Fourteenth

Amendment procedural due process violation, pursuant to 42 U.S.C. § 1983.

> The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The threshold question in assessing Plaintiffs' procedural due process claim is whether they were deprived of a protected liberty or property interest. Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 445-46 (8th Cir. 1995). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). A property interest may arise from "'existing rules or understandings that stem from an independent source such as state law.'" Skeets v. Johnson, 816 F.2d 1213, 1214 (8th Cir. 1987) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Pyron v. Ludeman, No. 10-cv-3759 (PJS/JJG), 2011 WL 3293523, at *7 (D. Minn. June 6, 2011)

report and recommendation adopted, No. 10-cv-3759 (PJS/JJG), 2011 WL 3290365 (D. Minn.

---

is responsible under § 1983."). Municipalities and other local government entities *do not* incur liability under Section 1983 "unless action pursuant to official municipal policy of some nature caused a *constitutional tort*." Anderson v. City of Hopkins, 805 F. Supp. 2d 712, 722-23 (D. Minn. 2011) (citing Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003) (internal citations omitted); Sitzes v. City of W. Memphis Ark., 606 F.3d 461, 470 (8th Cir. 2010) (without any underlying constitutional violation, a plaintiff cannot maintain a claim against a local government) (emphasis added). Accordingly, for an alleged Section 1983 Monell claim to survive a Rule 12(c) motion for judgment on the pleadings, a plaintiff must plead facts sufficient to implicate (1) the existence of a municipal custom or policy (2) that is the "moving force" behind a constitutional violation. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).

With respect to Section 1983 claims alleged against state actors in their individual capacities, Plaintiff "must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). To state an individual capacity claim for relief pursuant to Section 1983, a plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged *constitutional violation*. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

July 29, 2011) aff'd sub nom. Hollie v. Ludeman, 450 F. App'x 555 (8th Cir. 2012). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

The Court reviews alleged violations of procedural due process in two steps. Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). First, the Court determines whether the plaintiff has alleged deprivation of a protected liberty or property interest. Id. If the plaintiff has a protected liberty or property interest, the Court determines "what process is due by balancing the specific interest that was affected . . . the likelihood that the [applicable procedures] would result in an erroneous deprivation, . . . [and the affected program's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Id. (citing Mathews, 424 U.S. at 332-35).

Even assuming Plaintiff has alleged deprivation of a protected property interest – namely, the monetary value of the booking fee and the monetary value of receiving the balance of his detention account in cash, untethered to potential alleged debit card fees – the Court finds that Plaintiff has ultimately failed to allege a violation of his procedural due process rights.

Although it appears as though the issues of whether assessing a booking fee and/or returning detainees' money in the form of a prepaid debit card violate procedural due process are questions of first impression for the Eighth Circuit, other Circuits have held that collecting nominal fees from arrestees for booking and other administrative costs, without a predeprivation hearing, does not violate procedural due process. In Sickles v. Campbell Cnty., Kentucky, 501 F.3d 726 (6th Cir. 2007), the Sixth Circuit considered whether a municipal jail may withhold a portion of a pretrial detainee's canteen account funds to cover the costs of booking without a

predeprivation hearing. The Sixth Circuit held that the booking fee did not violate procedural due process. "[T]he 'private interest[s]' at issue are small in absolute and relative terms, totaling $20 in Sickles' case and $110.27 in Hensley's. The private stakes at issue thus do not begin to approach the kinds of government conduct that have required a predeprivation hearing[.]" <u>Id.</u> at 730. The Sixth Circuit specifically examined the constitutionality of county policies of withholding detainees' canteen funds to cover the costs of booking, room and board, and other administrative fees; the counties at issue charged a $30 booking fee in addition to a daily "room and board" fee of $20 or $5. <u>Id.</u> Plaintiffs demanded a predeprivation hearing, but the Sixth Circuit held that the <u>Mathews</u> factors weighed in favor of the defendants. The court held that the property interests at issue were slight, the risk of erroneous deprivation minor, and the government interest in assessing the fees significant:

> [T]he risk of erroneous deprivation is minor. The withholding of funds involves elementary accounting that has little risk of error and is non-discretionary. . . . In view of the modest private interests at stake, the small risk of error, the limited benefits of additional safeguards and the unchallenged government interests in the policy, we see no need to constitutionaliz[e] . . . [these] government procedures and to impose the additional cost in terms of money and administrative burden that such a predeprivation procedure would require.

<u>Id.</u> at 730-31 (internal quotations omitted).

Similarly, in <u>Slade v. Hampton Roads Reg'l Jail</u>, 407 F.3d 243 (4th Cir. 2005), the Fourth Circuit examined the constitutionality of a one-dollar-per-day jail "housing charge." The <u>Slade</u> court held that "to require pre-deprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the [jail's] costs of incarcerating prisoners. Accordingly, we do not believe that procedural due process requires a pre-deprivation hearing

before the charge is deducted from a prisoner's account." Id. at 254. See also Broussard v. Parish of Orleans, 318 F.3d 644 (5th Cir. 2003) (finding no due process violation by bail fee statutes requiring arrestees to pay certain fees after posting bail, and specifically holding that (1) the statutes did not violate arrestees' procedural or substantive due process rights, (2) the statutes were not unconstitutionally vague, and (3) the statutes did not constitute unreasonable seizure); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410 (3d Cir. 2000) (holding that a predeprivation hearing was not necessary prior to assessing a $10 daily housing fee during inmate's incarceration, and that postdeprivation remedies satisfied due process); see in accord, Markadonatos v. Vill. Of Woodbridge, 760 F.3d 545 (7th Cir. 2014) (per curiam) (although not reaching the merits of the due process claims, ultimately affirming the district court's dismissal of a Section 1983 claim alleging a due process violation stemming from the assessment of a $30 booking fee).

With guidance from the above-identified, described, and available case law, the Court in the present case now undertakes an independent analysis of the three Mathews factors with respect to Plaintiff's alleged violations of procedural due process. First, although the Court will assume that Plaintiff has a recognizable property interest in his money and other funds in his jail account received from outside sources during the pendency of his detention,[4] the specific property interests at issue are *de minimus*. As the Sixth Circuit held in Sickles, supra, Plaintiff's

---

[4] The Eighth Circuit has held on numerous occasions that inmates have a property interest in money that is sent to them from an outside source. Mahers v. Halford, 76 F.3d 951, 954 (8th Cir. 1996) ("We agree with the district court that inmates have a property interest in money received from outside sources."); see also Parrish v. Mallinger, 133 F.3d 612, 614 (8th Cir. 1998) ("Defendants concede, as they must, that Parrish [plaintiff] has a property interest in the money his mother sent him that is protected by the Due Process Clause of the Fourteenth Amendment.").

Fogle v. Bellow-Smith, No. 4:06-CV-227 (ERW), 2007 WL 2507756, at *4 (E.D. Mo. Aug. 30, 2007).

interest in both the $25 booking fee and potential *de minimus* debit card charges is slight and "do[es] not begin to approach the kinds of government conduct that have required a predeprivation hearing[.]" <u>Sickles</u>, 501 F.3d at 730.

Second, the risk of erroneous deprivation is virtually non-existent. First, the assessment of the booking fee, as dictated by the terms of Minn. Stat. § 641.12, is entirely non-discretionary and applies *without exception* to *all* individuals booked into any Washington County detention facility: "A county board may require that each person who is booked for confinement at a county or regional jail, and not released upon completion of the booking process, pay a fee to the sheriff's department of the county in which the jail is located to cover costs incurred by the county in the booking of that person." Minn. Stat. § 641.12, subd. 1. The assessment requires the simple deduction of $25 from each detainee's available funds, whether from the cash possessed by the detainee upon arrest or from any money deposited into the detainee's jail account on the detainee's behalf.[5] Most significantly, Minn. Stat. § 641.12 provides for reimbursement of the booking fee in the event the detainee is not charged, is acquitted, or the charges are dismissed. <u>Id.</u> This statutory provision ensures that those not adjudicated guilty are provided a post-deprivation remedy and are not erroneously and permanently deprived of the booking fee.

Likewise, with respect to the debit card policy, any fees associated with the prepaid debits cards are assessed against all eligible prepaid debit cards, without discretion, by simple mathematical calculations.

---

[5]     If the person has no funds at the time of booking or during the period of any incarceration, the sheriff shall notify the district court in the county where the charges related to the booking are pending, and shall request the assessment of the fee. Notwithstanding section 609.10 or 609.125, upon notification from the sheriff, the district court must order the fee paid to the sheriff's department as part of any sentence or disposition imposed.

Minn. Stat. § 641.12m subd. 1.

Finally, Washington County's interest in both assessing the booking fee and issuing the prepaid debit cards is significant. Washington County – as is the case with most municipalities – has a strong interest in assessing nominal administrative fees to off-set the larger costs of detention and maintaining correctional facilities generally. Similarly, the Court finds that Washington County's interest in returning detainee's cash and coin in the form of a prepaid debit card (or check)[6] is significant. The presence of cash in a jail creates risks of mishandling, corruption, and safety. Additionally, with respect to both policies, Washington County has a significant interest in avoiding the substantial administrative costs and inefficiencies that come with predeprivation hearings. As the Fourth Circuit held in Slade, predeprivation hearings would significantly increase transaction costs and essentially frustrate an important purpose of the existing policies, namely, to reduce the County's costs associated with detaining individuals.

Balancing the three Mathews factors with respect to both Washington County's assessment of a $25 booking fee and the issuance of prepaid debit cards, and with guidance from other Circuits that have addressed nearly identical policies, the Court finds that Plaintiff has failed to plead a violation of his procedural due process rights.

The Court specifically notes that with respect to the assessment of the booking fee, even more persuasive than the above analysis of the three Mathews factors, is the fact that Washington County assesses the booking fee pursuant to and in accordance with a non-discretionary Minnesota State Statute, the constitutionality of which Plaintiff has specifically stated he does not challenge.[7] Minn. Stat. § 641.12, subd. 1 provides:

---

[6] At the detainee's option.
[7] Even if Plaintiff did not concede that he does not challenge the constitutionality of Minn. Stat. § 641.12, Plaintiff has failed to comply with the procedural requirements for challenging the constitutionality of the state statute. Federal Rule of Civil Procedure 5.1 requires, among other things, a party challenging the constitutionality of a state statue to "file a notice of constitutional question stating the question and identifying the paper that raises it if . . . the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity." Fed.

> A county board may require that each person who is booked for confinement at a county or regional jail, and not released upon completion of the booking process, pay a fee to the sheriff's department of the county in which the jail is located to cover costs incurred by the county in the booking of that person. The fee is payable immediately from any money then possessed by the person being booked, or any money deposited with the sheriff's department on the person's behalf. If the person has no funds at the time of booking or during the period of any incarceration, the sheriff shall notify the district court in the county where the charges related to the booking are pending, and shall request the assessment of the fee. Notwithstanding section 609.10 or 609.125, upon notification from the sheriff, the district court must order the fee paid to the sheriff's department as part of any sentence or disposition imposed. If the person is not charged, is acquitted, or if the charges are dismissed, the sheriff shall return the fee to the person at the last known address listed in the booking records.

Minn. Stat. § 641.12. Minn. Stat. § 641.12 dictates precisely how and in what manner Minnesota counties – including Washington County – may assess detention facility booking fees; should a county choose to assess a booking fee as provided by Section 641.12, the statute provides for *no discretion* with respect to the logistics of assessment. Nothing in the present record before the Court indicates that Washington County assessed Plaintiff's booking fee *illegally*, nor does Plaintiff plead any facts to that effect.

The Court finds that the assessment of the booking fee is a direct consequence of conviction as imposed by an unchallenged state statute. Because Plaintiff was indeed convicted of the underlying DUI in the present case, the Court finds that he received procedural due process as provided by Minnesota State Statute and would have gained *nothing* as a result of a preliminary hearing prior to assessment of the booking fee. For this reason alone, Plaintiff

---

R. Civ. P. 5.1(a). Even if Plaintiff intended to challenge the constitutionality of Minn. Stat. § 641.12, he has failed to comply with Rule 5.1.

necessarily fails to allege a Section 1983 claim with respect to the assessment of the booking fee because he fails to allege any violation of his due process rights.[8]

Because Plaintiff fails to plead any violation of his constitutional rights,[9] the Court recommends **GRANTING** Defendants' Motions for Judgment on the Pleadings, [Docket Nos. 57, 65, 70], with respect to Count I.[10]

---

[8] Perhaps just as significantly, the Court takes this opportunity to note that it is entirely possible for a released detainee to avoid incurring fees with respect to the prepaid debit cards. (See Inmate Release Card Program Fee [Docket No. 43-1], at 7).

[9] As to Defendants KCN, FCB, and Outpay, because the Plaintiff has failed to plead an actionable violation of his constitutional rights to support his Section 1983 claim, the Court need not address whether these Defendants were state actors.

[10] It is worth noting that the Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, reviewed *identical* issues in August 2014. In Mickelson v. Ramsey County, the plaintiffs challenged Ramsey County's $25 booking fee charged to all individuals booked for confinement in its detention facilities *and* Ramsey County's analogous debit card policy. Mickelson v. County of Ramsey, et al., No. 13-cv-2911 (SRN/FLN) (D. Minn. Aug. 26, 2014) (Order [Docket No. 91], at 2). Directly analogous to the present case, the County imposed the booking fee pursuant to Minnesota law – Minn. Stat. § 641.12 – to offset costs associated with booking inmates, and detainees were entitled to a refund of the booking fee in the event they were not charged with a crime, were acquitted, or the charges were dismissed. (Id. at 2-3). Also directly analogous to the present case, cash held during an inmate's detention was released to departing detainees in the form of a check or prepaid debit card. (Id. at 4). Just like Washington County in the present case, Ramsey County entered into a contract with KCN to provide prepaid debit cards to inmates released from Ramsey County detention facilities. (Id. at 5). "Pursuant to the terms of the agreement . . . FCB issued the debit cards and Outpay processed any debit card transactions." (Id.) The Mickelson plaintiffs alleged claims *identical* to those advanced in the present case: one count of deprivation of civil rights in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments – unlawful seizure, denial of property interest, and denial of due process; one count of conspiracy to violate civil rights in violation of 42 U.S.C. § 1985(3); one count of common law conversion; one count of civil theft in violation of Minn. Stat. § 604.14; and one count of common law unjust enrichment. (Id. at 6).

Applying the three-factor Mathews balancing test, and with reference to analogous "booking fee" cases from other Circuits, the Mickelson court (13-cv-2911 (DMN)) ultimately held that the collection of nominal fees from arrestees for booking, room and board, or bond, or via prepaid debit cards, without a predeprivation hearing, does not violate due process, "particularly in light of the low amount of discretion involved, the administrative nature of the fee, and the minimal risk of error." (Id. at 11-20). Judge Nelson acknowledged that the plaintiffs had a property interest in their money but that the interest is appropriately characterized as insubstantial; "the private interests at stake here, both with respect to the $25 booking fee and the smaller fees associated with the debit cards, are relatively modest." (Id. at 14). Judge Nelson highlighted the fact that the County's booking fee is statutorily authorized and applicable to all individuals booked for confinement, and that this lack of discretion reduces the potential for erroneous deprivation. (Id. at 15). The same may be said of the debit card fees. (Id. at 16). Finally, Judge Nelson noted that the government's interest in conserving resources is substantial. (Id. at 17). "Ramsey County has a strong interest in continuing to assess a nominal booking fee to offset at least a portion of the administrative costs incurred in booking detainees. . . . Ramsey County likewise has an important interest in returning detainees' funds to them in the form of a prepaid debit card." (Id. at 18).

After conducting an independent analysis of the present facts and applicable case law, the Undersigned arrives at the same legal conclusions in the present case as Judge Nelson did in Mickelson.

**2.      Count II: Conspiracy to Violate Civil Rights in Violation of 42 U.S.C. § 1985(3)**

Plaintiff alleges Count II against all Defendants generally. (Third Amended Class Action Compl. [Docket No. 43], ¶¶ 103-106). Plaintiff alleges, "[b]y their conduct detailed above, Defendants have been and continue to be jointly engaged in a conspiracy with the purpose and effect of depriving Plaintiff and the Class members of their federally protected civil rights as set forth herein." (Id. ¶ 104). Plaintiff specifically alleges conspiracy with respect to the debit card policy. (Id. ¶ 105).

As discussed in the previous section, Plaintiff has failed to plead facts sufficient to demonstrate that any of the Defendants violated his constitutional rights, with respect to either the assessment of the booking fee or the issuance of prepaid debit cards. "Civil conspiracy requires an agreement to participate in unlawful activity and an overt act that causes injury, so it does not set forth an independent cause of action, but rather is sustainable only after an underlying tort claim has been established." K & S Partnership v. Continental Bank, N.A., 952 F.2d 971, 980 (8th Cir. 1991) (internal quotation and citation omitted). Plaintiff cannot demonstrate that he suffered a constitutional harm as a result of Defendants' alleged conspiracy and action if, as discussed above, he fails to plead any constitutional violation.[11]

Because Plaintiff fails to plead any constitutional violation, the Court recommends **GRANTING** Defendants' Motions for Judgment on the Pleadings, [Docket Nos. 57, 65, 70], with respect to Count II.

---

[11] Plaintiff's conspiracy claim fails for this reason alone. Moreover, the Plaintiff also fails to identify any race- or class-based animus that allegedly motivated the alleged conspiracy, as required when pleading conspiracy pursuant to Section 1985(3). Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971) (requiring, as an element of Section 1985(3) conspiracy, "the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment"; "[t]he conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all").

**3.** **Counts III-V: State Law Claims (Conversion, Civil Theft, Unjust Enrichment)**

Finally, with respect to Plaintiff's remaining state law claims for conversion, civil theft, and unjust enrichment, the Court finds that, as discussed above, Plaintiff has failed to identify or plead any *wrongful* or otherwise *illegal* conduct by Defendants, and therefore, his state law claims necessarily fail. The Court recommends **GRANTING** Defendants' Motions for Judgment on the Pleadings, [Docket Nos. 57, 65, 70], with respect to Counts III, IV, and V.

## III.   CONCLUSION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

1. That Defendant Washington County's Motion for Judgment on the Pleadings, [Docket No. 57], be **GRANTED**;

2. That Defendant Keefe Commissary Network, LLC's Motion for Judgment on the Pleadings, [Docket No. 65], be **GRANTED**;

3. That Defendants First California Bank and Outpay Systems, LLC's Joint Motion for Judgment on the Pleadings, [Docket No. 70], be **GRANTED**; and

4. That Plaintiff's Third Amended Class Action Complaint, [Docket No. 43], be **DISMISSED with prejudice** in its entirety.


Dated: January 15, 2015                                    s/Leo I. Brisbois
                                                           Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE


# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 29, 2015**, a writing that

specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by February 12, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.